OPINION OF THE COURT
David B. Saxe, J.
The facts of this case, either undisputed or conceded for purposes of this motion only, are as follows: the plaintiff trustees maintained an account at the defendant bank up until December 1986. On July 31, 1986, pursuant to the plaintiffs’ direction, the defendant bank debited the plaintiff’s account in the amount of $97,072 and purchased a six-month United States Treasury bill in the face amount of $100,000. The Treasury bill came due on January 29, 1987, by which time the plaintiff had closed its account at the defendant bank. Having no instructions from the plaintiff regarding how to pay over the funds, the defendant issued a cashier’s check in the amount of $100,000 and mailed it to the plaintiff’s address of record. The plaintiff asserts that it never received the check, the defendant says it was not returned by the postal service. In about October 1988, the plaintiffs discovered that they had never received the proceeds of the Treasury bill, and they contacted the defendant. The defendant indicated that it would only pay the $100,000 if the plaintiffs furnished an indemnity bond. Ultimately, the plaintiffs obtained such a bond, and the defendant paid $100,000. This action was then commenced.
The plaintiffs’ first cause of action seeks damages of $22,000 representing $18,000 interest on the $100,000 from January 29, 1987 to January 27, 1989, plus the $4,000 cost of the indemnity bond; its second cause of action claims conversion and seeks $18,000; the third cause of action claims unjust enrichment and seeks $18,000 in damages.
The defendant’s counterclaim alleges that the action is frivolous and seeks $10,000 in compensatory damages as well as sanctions.
The plaintiffs now move for summary judgment, contending that they have a legal right to interest for the period during which the bank retained the proceeds of the Treasury bill, and further that they are entitled to reimbursement of the cost of the indemnity bond. The defendant bank argues that it is entitled to summary judgment dismissing the complaint and granting the relief sought in its counterclaim.
*393 The basis of the plaintiffs’ argument is that the mailing of a cashier’s check was not proper tender, and therefore the defendant is liable for interest from the maturity date of the Treasury bill. In addition, they contend that as a matter of law the defendant was unjustly enriched by possession of those funds over the two-year period in question.
The defendant takes the position that it having been established that the check was mailed, UCC 3-804 applies and provides the plaintiffs’ sole remedy, making the bank’s sole obligation that of issuing a replacement check upon the posting of a bond.
The plaintiffs’ claim that transmittal of the check by mail was improper as a matter of law must be rejected at the outset. The cases relied upon by the plaintiffs at best stand for the proposition that if the mailed check was not received, tender was not completed. However, the defendant does not appear to concede that the check was not received; indeed, it asserts the likelihood that the plaintiffs’ agents misplaced the instrument, and relies upon the presumption of delivery (Engel v Lichterman, 95 AD2d 536). None of the cases cited by plaintiffs indicate that if a check is mailed, and the payee claims it was not delivered, the sender necessarily is liable for interest on the funds from the date of mailing.
Nevertheless, a claim for unjust enrichment may be made out under these circumstances, although a determination as to the appropriate rate of interest and starting date will require evidence (see, Santos v First Natl. State Bank, 186 NJ Super 52, 451 A2d 401 [1982]).
I turn to the question of whether UCC 3-804 requires dismissal of this action. The statute provides:
"§ 3-804. Lost, Destroyed or Stolen Instruments
"The owner of an instrument which is lost, whether by destruction, theft or otherwise, may maintain an action in his own name and recover from any party liable thereon upon due proof of his ownership, the facts which prevent his production of the instrument and its terms. The court shall require security, in an amount fixed by the court not less than twice the amount allegedly unpaid on the instrument, indemnifying the defendant, his heirs, personal representatives, successors and assigns against loss, including costs and expenses, by reason of further claims on the instrument”.
The defendant bank relies on this provision to support its contention that its only obligation was to issue a duplicate *394 cashier’s check once the payee obtained an indemnity bond. The plaintiffs, however, argue that section 3-804 is applicable only where the negotiable instrument has been in the possession of the payee at some point in time, and that if the instrument never made its way into the payee’s hands, the payor is solely responsible for the check, its loss and its replacement. Essentially, the plaintiffs contend that they are not an "owner” as section 3-804 requires, unless and until the check has at some time entered its possession, and for that reason the statute is inapplicable here.
The defendant cites one case from this State holding that the payee on a check mailed to him but apparently lost in transit was an "owner” despite his never having had possession of it (see, Guizani v Manufacturers Hanover Trust Co., NYLJ, Oct. 12, 1971, at 2, col 5 [Sup Ct, NY County, Fein, J.]). I recognize that Guizani is of limited controlling value, never having been reviewed by an appellate court. I further recognize that ownership of an undelivered cashier’s check is not necessarily unalterably with the payee, since in Bunge Corp. v Manufacturers Hanover Trust Co. (31 NY2d 223, 230-231), the court remarked: "It is generally accepted in banking law that a bank, absent notice of delivery * * * is permitted to accept official checks back from the remitter on the presumption that the remitter is still the owner of the checks.” Nevertheless, once it is found, or conceded (as plaintiffs have done here), that the check in question was mailed, I believe that UCC 3-804 must be viewed as applicable to the present circumstances. As long as it is established as a factual matter that the check was drawn and mailed, the instrument may certainly be deemed "lost * * * by destruction, theft or otherwise” as neither the drawer nor the payee nor any holder in due course claims to have possession of it. The purpose of section 3-804 is to provide a method for recovering on lost instruments while protecting the bank from double liability should the original check ultimately turn up and in the hands of a holder in due course — both goals are appropriate considerations under these circumstances.
Accordingly, summary judgment dismissing the complaint is granted only to the extent the plaintiffs claim entitlement to the cost of the indemnity bond, as their claim runs counter to the statutory provision.